Armando RUIZ, Appellant,

v.

Roy L. FORMAN, Appellee.

No. 6378.

Court of Civil Appeals of Texas,
El Paso.

Oct. 9, 1974.

Rehearing Denied Oct. 30, 1974.

L. Taylor Zimmerman, Bluford B. Sanders, Jr., El Paso, for appellant.

Robert E. Rosenberg, El Paso, for appellee.

OPINION

WARD, Justice.

This is a case concerning trespass to property. The non-negligent defendant appeals from the granting of a judgment non obstante veredicto, which awarded the plaintiff his damages when the defendant in order to avoid a collision with a third party intentionally swerved his own vehicle off of the highway and onto the plaintiff's property and caused damages thereto. We affirm.

The plaintiff, Roy L. Forman, filed suit to recover for damages caused when the automobile of Armando Ruiz struck a sign and certain personal property on the plaintiff's premises located on the north side of Alameda Street in El Paso. The plaintiff alleged that various acts of negligence were committed by the defendant and alternatively alleged that the defendant committed a trespass by unlawfully going onto the property leased by the plaintiff where the damages occurred. Upon trial to a jury, the defendant Ruiz was absolved of all acts of negligence but it also found that the plaintiff suffered damages to his property in the amount of $270.00. No issues were requested and none were submitted concerning the plaintiff's allegations of trespass. After the jury returned the verdict, the plaintiff moved for judgment non obstante veredicto on the grounds that the evidence clearly showed that the defendant intentionally entered the plaintiff's property and thereby caused him damage. The trial Court granted the plaintiff's motion and entered judgment against the defendant specifically finding in the judgment that the defendant, Armando Ruiz, having testified that he entered into plaintiff's premises in order to avoid a collision caused the damage to the plaintiff's property and was liable.

For reasons not apparent, the parties entered into a stipulation as to the cause of the plaintiff's damages even though the case was fully developed by their testimony

at the trial. The stipulation is to the effect that the defendant, with his automobile on or about February 27, 1973, when he was forced to swerve to avoid a collision with a truck, did strike and damage the property of the plaintiff. This indicates on first reading that the driving upon the plaintiff's land was intentional. This is the interpretation made of the stipulation by the plaintiff on this appeal. This places the defendant within the terms of Section 197, Restatement (Second) of Torts, which provides as follows:

"(1) One is privileged to enter or remain on land in the possession of another if it is or reasonably appears to be necessary to prevent serious harm to

(a) the actor, or his land or chattels,

. . .

"(2) Where the entry is for the benefit of the actor or a third person, he is subject to liability for any harm done in the exercise of the privilege stated in Subsection (1) to any legally protected interest of the possessor in the land or connected with it, * * * ."

If the action of the defendant was intentional and Section 197 applies, then our case is quite similar to two of the illustrations under Section 197. Illustration 3 is to the effect that: A, an aviator, while carefully and skillfully operating his airplane makes a forced landing on B's field in the reasonable belief that it is necessary to do so for the protection of himself and his plane. A is not liable for his mere entry, but under the statement in Subsection (2) is subject to liability for any harm thereby caused to B or to B's buildings, crops or other belongings. Illustration 13 is also applicable: While A is canoeing on a navigable river, he is suddenly overtaken by a violent storm. To save himself and his canoe from destruction, A lands on B's dock and pulls his canoe up onto the dock. In getting on B's dock or in placing his canoe there, A damages the dock. Although A's entry is privileged, he is liable to B for the harm so occasioned. Since the entry

was intentional, the actor is liable for the damage resulting therefrom however justifiable the entry, and even though it might have been made to save the actor's life. The culpable or moral fault, if any, is said to be attributed to the actor's refusal to pay for the damage done in the course of serving his own interests rather than in what he did. The legal fault centers around the notion that there was an intentional invasion of a legally protected interest. Keeton and Jones, 39 Texas L.Rev. 255. The above would afford a basis for a simple affirmance of the case.

The matter becomes involved however due to the testimony offered at the trial which is not contrary to the stipulation but which adds facts not contained in the stipulation. From this evidence it appears that defendant Ruiz was driving his car westerly in the outside lane of Alameda Street and that a Mr. Woodard was driving a truck in the inside lane westerly just ahead of the defendant Ruiz. The defendant testified that as he approached the truck it suddenly swerved into his lane of traffic forcing him to slam on his brakes and veer to the right. He stated that he "consciously and intentionally turned his wheels to the right to avoid hitting the truck." He then ran onto the gravel shoulder of the road where he lost all control of his car and continued on to where he struck the plaintiff's property. The Appellant argues that these facts present an entry or invasion which is both non-intentional and as found by the jury non-negligent. Such an entry fits within the terms of Section 166, Restatement (Second) of Torts, entitled: Non-liability for Accidental Intrusions. That section provides that an unintentional and non-negligent entry on land of another by one not engaged in an abnormally dangerous activity does not subject the actor to liability to the possessor even though the entry causes harm to the possessor. Section 166 was applied in First City National Bank of Houston v. Japhet, 390 S.W.2d 70 (Tex.Civ.App.— Houston 1965, writ dism'd), where the mo-

torist suffered a heart attack, immediately lost consciousness and his car ran onto the plaintiff's land. Under such circumstances, the Court held that the weight of authority and better reasoning would prevent liability.

The Appellant would have us apply the rule from the Japhet case to our fact situation. This we are unable to do because of the position adopted by our Texas Supreme Court in Mountain States Telephone and Telegraph Company v. Vowell Construction Company, 161 Tex. 432, 341 S.W.2d 148 (1960). There, the defendant's scraper was deliberately and intentionally used to make a cut to a designated sub-grade. The scraper cut the plaintiff's telephone cable which was underground and the defendant was held liable for the invasion and destruction of the plaintiff's property right.

A similar situation was presented in Schronk v. Gilliam, 380 S.W.2d 743 (Tex. Civ.App.—Waco 1964, no writ). There, the defendant was held liable for damages to the plaintiff's land caused by poison dropped from an airplane. The defendant was held to have trespassed upon the plaintiff's land because he had intended the act which caused the trespass although he did not intend for the poison to fall on the plaintiff's land.

As pointed out in the Japhet case, in both Mountain States Telephone and Telegraph Company v. Vowell Construction Company and Schronk v. Gilliam, the defendant intended the act which resulted in the trespass, although there was no intentional invasion of the plaintiff's property. In each instance, the defendant was held liable. In the case before us, Armando Ruiz intentionally turned his automobile off the road and this caused the invasion of the plaintiff's property. He intended the act which resulted in the trespass even though he did not intend to invade the plaintiff's land or inflict damages upon the plaintiff. He is therefore liable.

Possibly some comfort can be afforded the Appellant by Professor Prosser who anticipates that Texas will abandon its present position. Prosser, Torts 4th Ed., at 64. · This is for the Texas Supreme Court to decide.

For the reasons stated, the judgment of the trial Court is affirmed.